**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF RHODE ISLAND**

**THADDEUS TAYLOR,** *pro se,*

**v.** **C.A. No.: 05-118T**

**A.T.WALL,** Director, Rhode Island Department of Corrections, **RHODE ISLAND DEPARTMENT OF CORRECTIONS, CONNECTICUT DEPARTMENTOF CORRECTIONS, STATE OF CONNECTICUT,** and **TERESA LANTZ, et al.**

**REPORT OF DEFENDANTS' COUNSEL REGARDING THE COURT-ORDERED MEETING WITH PLAINTIFF THADDEUS TAYLOR**

Pursuant to the August 30, 2005 order of the Court, Senior Legal Counsel Kathleen Kelly and Chief Legal Counsel Patricia A. Coyne-Fague, counsel for defendants, arranged a meeting with Plaintiff Thaddeus Taylor to discuss three topics: (1) to ascertain which, if any pleadings Plaintiff was missing so that defense counsel could provide him with a copy; (2) to discuss Plaintiff's discovery requests and Defendants' objections, with an eye toward agreements; and (3) to explore possible settlement.

Counsel scheduled to go to the High Security Center on the morning of September 9, 2005 to meet with Plaintiff. In anticipation of the meeting, Senior Legal Counsel Kelly prepared a list of all pleadings and faxed it to Deputy Warden Donna Collins to be hand-delivered to Plaintiff, on Wednesday, September 7th. Attorney Kelly also included a letter that informed Plaintiff that we would meet with him prior to the end of the week. In addition, counsel faxed to the facility the letter and docket sheet that the Court ordered us to forward to Plaintiff, on Thursday, September 8th. These documents were sent to the Plaintiff prior to our meeting so that the Plaintiff could go through them

in order to ascertain which, if any, documents he was missing. It was our intent at the meeting to highlight on our list those documents that Plaintiff required, and to obtain copies for him. We were informed by Lt. Galligan that in anticipation of our meeting, and despite Plaintiff's disciplinary status, (he is serving a sentence in segregation) he would be permitted access to his legal materials and time to go through them.

The second part of the Court's order required us to discuss discovery issues with the Plaintiff. In anticipation of that discussion, we brought with us to the meeting a copy of the Plaintiff's requests and our answers. It was our intent to go through each request and answer to ascertain whether there were any requests of Plaintiffs with which we could comply.

Finally, we were to discuss possible settlement at our meeting. In anticipation of that discussion, Chief Legal Counsel Coyne-Fague had a meeting with Director Wall to explore possible settlement parameters.

Counsel explicitly arranged that in fairness to the Plaintiff our meeting would be supervised by correctional officers who are not defendants in any actions filed by Plaintiff.[1] At 10:00 a.m. on September 9th, counsel arrived at and were admitted to the High Security Center. We waited in the Captain's office while Lt. Galligan radioed to another correctional officer to send inmates currently working in the facility's law library back to their cells and to bring Plaintiff to the law library for our meeting. Lt. Galligan informed us that he had earlier asked Plaintiff what materials he needed for the meeting.

Plaintiff was in the law library when counsel arrived. Plaintiff had with him a small stack of documents, but no pen or pencil that counsel observed. The moment we

---

[1] During the meeting the officers within the law library were officers Zannini and Fehenel. Officer Manning and Lt. Galligan were in the corridor.

arrived in the room he stated that the meeting could not proceed unless his handcuffs were removed. (Plaintiff's hands were handcuffed behind his back). The officers present informed that as a disciplinary status inmate Plaintiff had to be handcuffed whenever he was out of his cell. Attorney Coyne-Fague informed Plaintiff that any decisions regarding handcuffs were the correctional staff's to make, not hers. Plaintiff began yelling: "You mean to tell me that you can't get A.T. Wall on the phone right now and have these handcuffs taken off?" Attorney Coyne-Fague again told Plaintiff that it was up to the correctional officers but asked the officers, in Plaintiff's presence, if they would consider moving Plaintiff's handcuffs to the front. Pursuant to counsel's request, and as a courtesy to counsel, the officers re-handcuffed Plaintiff so his hands were in the front, rather than behind his back. Counsel submits that Plaintiff would in fact be able to take notes, as he requested, with his hands handcuffed in front. Attorney Coyne-Fague has been present at many court hearings held in the High Security Center law library where inmate litigants were able to write and go through documents while handcuffed in front. Attorney Coyne-Fague was unwilling to request that Plaintiff's handcuffs be removed entirely, and submits that even if she had, it would be unlikely that correctional staff would have accommodated such a request. Counsel further notes that despite Plaintiff's loud protestations that he needed to take notes, counsel saw no writing instruments among the materials that Plaintiff brought to the meeting.

Regardless, counsel informed Plaintiff that she had brought a tape recorder to the meeting, and showed it to Plaintiff. Counsel explained that recording the meeting would eliminate any debate over what was discussed at the meeting and would in fact, eliminate the need to take notes, leaving all parties free to discuss the matters at hand without

encumbrance. Plaintiff continued to shout at counsel that he would not proceed with the meeting, and refused to answer counsel's question as to whether he consented to the tape recorder. As a result, counsel never turned the recorder on.

Attorney Coyne-Fague invited Plaintiff once again to please sit and see how far we could get in the meeting; to at least give it a try. Plaintiff and counsel sat at the table, and Coyne-Fague once again asked Plaintiff if she could tape record the meeting. Plaintiff again began arguing that he would not proceed with the meeting because he was handcuffed. Coyne-Fague then informed Plaintiff that we would not stay and argue with him, and at that point, counsel terminated the meeting and left the facility.

Upon leaving the facility, Chief Legal Counsel Coyne-Fague inquired of Lt. Galligan whether Plaintiff had asked for a pen or pencil prior to the meeting. The Lt. informed counsel that he had not, nor would he have been prohibited from bringing one to the meeting.

Respectfully submitted,
Defendant, by his attorneys

Kathleen M. Kelly #5501
Senior Legal Counsel
RI Department of Corrections
40 Howard Avenue
Cranston, RI 02920
(401) 462-2546/(401) 462-2583 *fax*

Patricia A. Coyne-Fague #5198
Chief Legal Counsel
RI Department of Corrections
40 Howard Avenue
Cranston, RI 02920
(401) 462-0145 /(401) 462-2583 *fax*

**Certification**

I hereby certify that a true copy of the within document was mailed, postage pre-paid, to plaintiff Thaddeus Taylor, P.O. Box 8200, Cranston, RI 02920 on this 9th day of September 2005.